UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ANTHONY VALENTINE,                 :

             Petitioner,    :    11 Civ. 4338 (JSR)(HBP)

    -against-                 :    REPORT AND
                           RECOMMENDATION
UNITED STATES OF AMERICA,           :

             Respondent.    :

----------------------------------X


       PITMAN, United States Magistrate Judge:


       TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction


       Pro se petitioner Anthony Valentine moves pursuant to

Title 28 United States Code Section 2255 to vacate, set aside or

correct his sentence (Petition, filed on July 10, 2011 (Docket

Item 1) ("Petition") at 1).

       Pursuant to a written plea agreement, petitioner pled

guilty on June 18, 2008 to one count of participating in a murder

in connection with a conspiracy to distribute and possess with

intent to distribute 50 grams or more of cocaine, in violation of

Title 21 United States Code Section 848(e)(1)(a) and Title 18

United States Code Section 2, and one count of using, carrying

and possessing a firearm, and aiding and abetting the same, in connection with the cocaine conspiracy, in violation of Title 18 United States Code Sections 2 and 924(c)(1)(A)(i).  As part of the agreement, petitioner agreed not to appeal from or collaterally attack any sentence within or below the stipulated Sentencing Guidelines range of 352 to 425 months.  On October 30, 2008, the Honorable Jed S. Rakoff, United States District Judge, sentenced petitioner to a term of 330 months.  Petitioner is currently incarcerated pursuant to that judgment.

Petitioner challenges his conviction, arguing that the plea agreement is invalid for lack of consideration and mutual assent, and that his attorneys must have been ineffective for advising him to agree to an allegedly defective plea bargain. Petitioner also alleges that his defense counsel colluded with the Government to reach the plea agreement and claims fraud on that basis.  Finally, petitioner requests an evidentiary hearing and appointment of counsel in connection with his claims.  The Government opposes the Petition on the grounds that petitioner's claims are barred by the waiver provisions of the plea agreement, are procedurally barred and, in any event, lack merit.

For the reasons set forth below, I respectfully recommend that the motion to vacate the sentence be denied and that the Petition be dismissed.

II.   Background

    A.   Petitioner's
       Underlying Offenses

       According to the Government's Memorandum of Law in
Opposition to Defendant Anthony Valentine's Motion, dated Novem-
ber 28, 2011 ("Opp'n") (Docket Item 9), the evidence offered at
the trial of petitioner's co-defendant, Chaz Glynn, established
the following facts.

       Petitioner participated in a narcotics conspiracy in
the Bronx, New York.  Specifically, petitioner sold crack and
powder cocaine to dealers, including an individual named Charles
Myers who resided in Virginia.  Chaz Glynn, who held a high-
ranking position in the Bloods gang, was one of petitioner's
conspirators.

       In late 1999, Myers arranged to purchase three kilo-
grams of cocaine from petitioner for approximately $70,000.  As
was customary between Myers and petitioner, Myers drove to the
Bronx, provided petitioner with the money and waited in his car
for petitioner to return with the cocaine.  After the transaction
had concluded, Myers learned that the amount of cocaine he
received was one-half kilogram short.  Petitioner told Myers that
Myers would have to purchase additional cocaine in order to be

reimbursed for the shortage.  Myers acquiesced to petitioner's request and, on May 22, 2000, Myers again drove to the Bronx from Virginia to purchase an additional $20,000 worth of cocaine.  On this occasion, Myers was accompanied by an individual named Frederick Fowler who was not involved with the drug transaction. After arriving in the Bronx, Myers provided petitioner with $20,000 and waited in the car with Fowler for petitioner to return with the cocaine.

Unbeknownst to Myers, petitioner had earlier agreed with Glynn to rob Myers of the $20,000.  Petitioner had informed Glynn that they would need to murder Myers in order to complete the robbery because Myers knew where petitioner lived.  Glynn directed two of his associates in the Bloods gang -- Edwin Kline and Freddie Robinson -- to carry out the murder.  While Myers and Fowler waited in Myers' car for petitioner to return with the drugs, Kline and Robinson approached the vehicle and fired shots, killing Fowler.  Glynn and petitioner paid Kline and Robinson $3,500 each and divided the remaining cash between themselves. Myers survived the incident and led police officers to peti-tioner's apartment.

B.   Procedural History

1.   Indictment

On July 12, 2006, the Government issued a warrant for
petitioner's arrest (Docket Item 7 in 06 Cr. 580).  The underly-
ing indictment charged petitioner and others, including Glynn,
with having committed various racketeering, narcotics and fire-
arms offenses, including murder in aid of racketeering (Indict-
ment, S4 06 Cr. 580 (JSR), filed June 4, 2008 (Docket Item 94 in
06 Cr. 580), at 6, 7, 9).[1]  Specifically, Count One charged
petitioner and others with knowingly murdering Fowler, either
directly or as an aider and abetter, for the purpose of gaining
entrance to and maintaining and increasing their positions in the
Bloods gang, in violation of Title 18 United States Code Section
1959(a)(1).  Count Three charged petitioner and others with
knowingly killing and causing the death of Fowler while engaged
in a drug conspiracy, in violation of Title 21 United States Code
Section 848(e)(1)(A) and Title 18 United States Code Section 2.
Count Six charged petitioner and others with using and possessing
a firearm, aiding and abetting the use of a firearm and causing

------

[1]Only Counts One, Three and Six of the Indictment charged
petitioner; the remaining Counts pertained solely to petitioner's
co-defendants.

5

the death of a person through the use of that firearm, in viola-
tion of Title 18 United States Code Sections 924(j) and 2.

    2.   Superseding Information,
         Plea Agreement
         and Allocution

On June 18, 2008, petitioner waived indictment and
consented to the filing of a superseding felony information
(Docket Item 109 in 06 Cr. 580).  The superseding information
charged petitioner with one count of murder in furtherance of a
drug conspiracy and one count of possession of a firearm in
furtherance of a separate drug conspiracy, in violation of Title
18 United States Code Sections 924(j) and 924(c)(1)(A)(i) and 2,
respectively (Opp'n, Ex. A at A-7 to A-8).

Petitioner and the Government entered into a written
plea agreement, also on June 18, 2008, pursuant to which peti-
tioner agreed to plead guilty to both counts in the superseding
information (Opp'n, Ex. A at A-10 to A-16).  The plea agreement
also contained the following stipulations:

   •   A sentence within the range of 352 to 425 months would
       constitute a reasonable sentence under the United
       States Sentencing Guidelines ("Guidelines").

   •   Petitioner would not file a direct appeal or collater-
       ally attack any sentence within or below the stipulated
       Guidelines range of 352 to 425 months.

(Opp'n, Ex. A at A-13, A-14).

On June 18, 2008, petitioner pled guilty to the super-
seding information before the Honorable Andrew J. Peck, United
States Magistrate Judge (Opp'n, Ex. A at A-17 to A-38).  David S.
Greenfield, Esq. and Avraham Moskowitz, Esq. represented peti-
tioner at the plea allocution.  Petitioner testified at the plea
allocution that he was satisfied with his counsel, he had read
and discussed the counts in the superseding information with
counsel and he understood the charges contained therein (Opp'n,
Ex. A at A-21 to A-23).  Petitioner also stated that he under-
stood and agreed to the terms of the plea agreement (Opp'n, Ex. A
at A-29 to A-31).  Judge Peck expressly informed petitioner that,
pursuant to the terms of the plea agreement, petitioner was
barred from appealing or collaterally attacking any sentence
within or below the range of 352 to 425 months, and petitioner
confirmed that he understood this waiver provision (Opp'n, Ex. A
at A-30).  After completing the allocution required by
Fed.R.Crim.P. 11, Judge Peck found that petitioner had "volun-
tarily and knowingly" entered his guilty plea and, thus, recom-
mended that Judge Rakoff accept the plea (Opp'n, Ex. A at A-37).
By Order, dated June 20, 2008, Judge Rakoff accepted petitioner's
guilty plea (Docket Item 116 in 06 Cr. 580).

3.  Sentencing

Judge Rakoff conducted a sentencing hearing on October 30, 2008 (Opp'n, Ex. A at A-45 to A-64).  Greenfield and Moskowitz again represented petitioner.  Moskowitz urged Judge Rakoff to impose the mandatory minimum sentence of 240 months on Count One and 60 months on Count Two for a combined sentence of 300 months' imprisonment (Opp'n, Ex. A at A-48).  The Government informed Judge Rakoff that the parties had agreed in the plea agreement that a sentence within the stipulated Guidelines range of 352 to 425 months would constitute a reasonable sentence and urged Judge Rakoff to impose a sentence within that range (Opp'n, Ex. A at A-49).  The Government also noted that the plea agree- ment had been "structured quite carefully in negotiation with the parties so that [] Count Two [was] not attached to Count One;" an attached count would have resulted in a higher mandatory minimum sentence for petitioner (Opp'n, Ex. A at A-53 to A-54).

Notwithstanding the parties' stipulated Guidelines range, Judge Rakoff sentenced petitioner to a term of 270 months' imprisonment on Count One, and a consecutive term of 60 months' imprisonment on Count Two, for a total of 330 months (Opp'n, Ex. A at A-62).  The judgment of conviction was entered on November 4, 2008 (Opp'n, Ex. A at A-65).

4.   Direct Appeal

Despite the appeal/2255 waiver provision in the plea agreement, petitioner appealed his sentence to the Second Circuit on or about November 14, 2008 (Opp'n, Ex. A at A-71).  Petitioner sought a remand for resentencing in light of the Second Circuit's holding in United States v. Williams, 558 F.3d 166 (2d Cir. 2009), vacated, 131 S. Ct. 632 (2010), that a five-year mandatory minimum sentence for possession of a firearm in furtherance of a drug conspiracy should not be imposed where defendant is subject to a longer mandatory minimum sentence for the underlying drug conspiracy offense.  The Second Circuit found that petitioner had "waived his right to appeal his below-Guidelines sentence," and dismissed petitioner's appeal.  United States v. Byrd, 379 F. App'x 84, 86-87 (2d Cir. 2010) (summary order).

III.  Analysis

   A.  Petitions Under
       28 U.S.C. § 2255

A prisoner in federal custody may move to vacate, set aside or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

9

impose such a sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).  To succeed on a collateral attack of a final judgment under Section 2255, petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  <u>United States v. Bokun</u>, 73 F.3d 8, 12 (2d Cir. 1995) (inner quotation marks and citations omitted); <u>accord</u> <u>Sanders v. United States</u>, 1 F. App'x 57, 58 (2d Cir. 2001) (summary order); <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000); <u>Rodriguez v. United States</u>, 11 Civ. 2957 (TPG), 2013 WL 6171618 at *1 (S.D.N.Y. Nov. 25, 2013) (Griesa, D.J.).

Moreover, where, as here, the "motion and the files and records of the case conclusively show that the petitioner is entitled to no relief," a court need not hold an evidentiary hearing.  28 U.S.C. § 2255(b); <u>see</u> <u>Lake v. United States</u>, 465 F. App'x 33, 34-35 (2d Cir. 2012) (summary order) (An evidentiary

"hearing is not required when, 'viewing the evidentiary proffers
. . . and record in the light most favorable to the petitioner,'
it is clear that the petitioner has failed to establish a 'plau-
sible claim of ineffective assistance of counsel.'" (citation
omitted)).

Finally, because petitioner is appearing pro se, the
Court construes the Petition liberally and interprets it to raise
the strongest arguments that it suggests.  See Erickson v.
Pardus, 551 U.S. 89, 84 (2007); Green v. United States, 260 F.3d
78, 83 (2d Cir. 2001); McPherson v. Coombe, 174 F.3d 276, 280 (2d
Cir. 1999).

    B.   Procedural
       Default

I consider first the Government's argument that peti-
tioner's claims should be dismissed as procedurally defaulted
because they were not raised on appeal.  Lambrix v. Singletary,
520 U.S. 518, 524 (1997) ("Our opinions . . . suggest that the
procedural-bar issue should ordinarily be considered first.");
accord Williams v. Spitzer, 246 F. Supp. 2d 368, 373 (S.D.N.Y.
Feb. 28, 2003) (Haight, D.J.) ("[I]n passing upon a habeas corpus
petition federal courts are instructed to analyze possible

procedural bars before turning to the merits of the . . . federal claim.").

In the context of a Section 2255 motion, the United States Court of Appeals for the Second Circuit has held that a "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992) (dismissing Section 2255 Petition for failing to show cause); see Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 633 (2d Cir. 2001) ("[W]e have held that the interests of finality, accuracy, integrity of prior proceedings, and judicial economy justify a district court's refusal to entertain a § 2255 action containing a procedurally barred claim, absent a showing of cause and prejudice."). Hence,

> [i]f . . . a habeas petitioner asserts a claim that he did not raise on direct review, that claim will be considered procedurally defaulted and thus ineligible for review in a Section 2255 proceeding unless the petitioner "can first demonstrate either 'cause' [for the default] and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). To satisfy the "cause" requirement, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991). Attorney ignorance or error is not "cause" for a procedural default unless the error rises to the level of constitutional ineffectiveness. Id. at 752-55. To establish "prejudice," the petitioner must establish that the errors "worked to his actual and substantial disadvantage, infecting

12

his entire trial with error of constitutional dimen-
sions." Rodriguez v. Mitchell, 252 F.3d 191, 203 (2d
Cir. 2001) (citations omitted).  Finally, to establish
actual innocence, the petitioner must demonstrate that
"in light of all the evidence, it is more likely than
not that no reasonable juror would have convicted him."
Bousely, 523 U.S. at 623 (internal quotation marks and
citations omitted).  The rule of procedural default
does not extend to claims of ineffective assistance of
counsel, which "may be brought in a collateral proceed-
ing under § 2255, whether or not the petitioner could
have raised the claim on direct appeal." Massaro v.
United States, 538 U.S. 500, 504 (2003).

Cole v. United States, 00 Cr. 105 (RPP), 04 Civ. 2716 (RPP), 2005

WL 217019 at *3 (S.D.N.Y. Jan. 27, 2005) (Patterson, D.J.);

accord Zhang v. United States, 506 F.3d 162, 165 (2d Cir. 2007);

see Garafola v. United States, 909 F. Supp. 2d 313, 326 (S.D.N.Y.

2012) (Koeltl, D.J.).  "[A]n important exception to the proce-

dural default rule" allows a habeas petitioner to raise a

claim of ineffective assistance in a Section 2255 petition even

though no ineffective-assistance claim was raised on direct

appeal.  Yick Man Mui v. United States, supra, 614 F.3d at 55,

citing Massaro v. United States, 538 U.S. 500, 508-09 (2003)

(holding that "failure to raise an ineffective-assistance-of-

counsel claim on direct appeal does not bar the claim from being

brought in a later, appropriate proceeding under § 2255").

       Here, there is no dispute that petitioner could have

but did not raise the claims in the Petition on direct appeal.

However, petitioner raises an ineffective-assistance claim.  As

13

support for his claim that he was denied effective assistance of counsel, petitioner alleges that counsel advised him to enter into a plea agreement which lacked adequate consideration and mutual assent, that his defense attorneys colluded with the Government to persuade him to sign the defective plea agreement and that this purported misconduct by his counsel amounted to fraud (Petition at 3, 5, 11, 13-14, 17-19).  To the extent that the foregoing arguments can be considered claims that are inde-pendent and separate from petitioner's ineffective-assistance-of-counsel claim, they should be dismissed as procedurally defaulted because petitioner did not raise them on direct appeal and has neither alleged cause and prejudice, nor shown actual innocence. However, to the extent that the foregoing are grounds in support of petitioner's ineffective-assistance-of-counsel claim, I address them below on their merits.

    C.   Section 2255
        Waiver in
        <u>Plea Agreement</u>

    The Government first argues that the Petition should be dismissed because petitioner waived his right to bring a Section 2255 motion.

    "It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an

agreed upon guideline range is enforceable." United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998). This principle was recently reaffirmed by the Second Circuit in United States v. Riggi, 649 F.3d 143, 146 (2d Cir. 2011) ("Waivers of the right to appeal a sentence are presumptively enforceable."), quoting United States v. Arevalo (Vigil), 628 F.3d 93, 98 (2d Cir. 2010); accord Grafton v. United States, CV-09-1551, 2011 WL 4793162 at *2 (E.D.N.Y. Aug. 24, 2011). A knowing and voluntary waiver of the right to litigate pursuant to Section 2255 is also valid and enforceable. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement.") (citation omitted); Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) ("We find no error in the District Court's determination that [petitioner's] plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of appeal and collateral attack."); Powell v. United States, 10 Cr. 243 (VM), 12 Civ. 7089 (VM), 2013 WL 2284907 at *3 (S.D.N.Y. May 9, 2013) (Marrero, D.J.); Garafola v. United States, supra, 909 F. Supp. 2d at 323; Calderon v. United States, 05 Civ. 3443 (SAS), 2006 WL 662332 at *2 (S.D.N.Y. Mar. 15, 2006) (Scheindlin, D.J.).

While petitioner does not challenge the "knowing and voluntary" aspect of his waiver, he does challenge the process by which the plea was derived.  Specifically, petitioner challenges the advice counsel provided to him during the plea process.  The presumption that a waiver is enforceable may be overcome by "an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, supra, 308 F.3d at 195-96, citing United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam).

> [W]aivers do not prevent defendants from "seeking relief from the underlying plea where" . . . "[a]n ineffective assistance of counsel claim . . . concerns the advice the defendant received from counsel," Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotations omitted) (emphasis added), because "the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel[,]" United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) (internal quotations omitted).  In particular, the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's advice about the bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct," which does avoid the waiver.  Parisi, 529 F.3d at 138-39 (emphasis original).

Liriano v. United States, 08 Civ. 5568 (DAB), 08 Civ. 5634 (DAB), 05 Cr. 253 (DAB), 03 Cr. 227 (DAB), 2009 WL 2972519 at *3 (S.D.N.Y. Sept. 16, 2009) (Batts, D.J.).

The mere assertion of an ineffective-assistance-of-counsel claim is not sufficient to overcome the presumption that a waiver is enforceable.  United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004) ("We reject the notion that an appeal waiver becomes unenforceable simply because a defendant 'claims' . . . ineffective assistance of counsel.").  The claim of ineffective assistance must relate to the plea process and be meritorious to void an otherwise valid waiver.  See United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (A "claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence." (citation omitted)); United States v. Monzon, supra, 359 F.3d at 118-19 ("The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious."); United States v. Djelevic, supra, 161 F.3d at 106 (A claim that counsel was ineffective "not at the time of the plea, but at sentencing" cannot survive a waiver.).  Otherwise, "a defendant who secured the benefits of a plea agreement by, inter alia, knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit."  United States v.

17

Oladimeji, 463 F.3d 152, 155 (2d Cir. 2006) (inner quotation marks and citation omitted).

Accordingly, if petitioner succeeds in demonstrating that counsel were ineffective, then the waiver cannot be en-forced.  Otherwise, the waiver is enforceable and the Petition must be dismissed.

> 1.   Ineffective Assistance
>      of Counsel

A claim that counsel was ineffective during the plea-bargaining process must be evaluated under the now-familiar, two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  See Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (Strick-land analysis applies to plea process); Ramzan v. United States, 11 Civ. 1191 (NRB), 06 Cr. 456 (NRB), 2012 WL 3188847 at *4 (S.D.N.Y. Aug. 6, 2012) (Buchwald, D.J.); Hernandez v. United States, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003) (Koeltl, D.J.). Under Strickland v. Washington, supra, 466 U.S. at 686-87:

> The benchmark for judging any claim of ineffectiveness
> must be whether counsel's conduct so undermined the
> proper functioning of the adversarial process that the
> trial cannot be relied on as having produced a just
> result.
>
> *     *     *
>
> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components.  First, the defendant must

18

show that counsel's performance was deficient.  This
requires showing that counsel made errors so serious
that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment.
Second, the defendant must show that the deficient
performance prejudiced the defense.  This requires
showing that counsel's errors were so serious as to
deprive the defendant of a fair trial, a trial whose
result is unreliable.  Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid

v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hurel-Guerrero v.

United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.

United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  Because the test is

conjunctive, a habeas petitioner's failure to satisfy either

prong requires that the challenge to the conviction be rejected.

Strickland v. Washington, supra, 466 U.S. at 697.

    With respect to the first element, petitioner must show

that "counsel's representation fell below an objective standard

of reasonableness."  Strickland v. Washington, supra, 466 U.S. at

688.  Courts "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional

assistance; that is, the [petitioner] must overcome the presump-

tion that, under the circumstances, the challenged action might

19

be considered sound trial strategy." <u>Strickland v. Washington</u>,
<u>supra</u>, 466 U.S. at 689 (inner quotation marks omitted).

With respect to the second element, petitioner must
show "a reasonable probability that, but for counsel's unprofes-
sional errors, the result of the proceeding would have been
different." <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 694.
Importantly, "[n]o prejudice exists when a plea agreement lessens
the severity of the sentence the defendant would face if con-
victed at trial." <u>Feliz v. United States</u>, 01 Civ. 5544 (JFK), 00
Cr. 53 (JFK), 2002 WL 1964347 at *7 (S.D.N.Y. Aug. 22, 2002)
(Keenan, D.J.) (citation omitted); <u>see</u> <u>Moran v. United States</u>, 96
Civ. 3657 (CSH), 93 Cr. 275 (CSH), 1998 WL 54616 at *5 (S.D.N.Y.
Feb. 10, 1998) (Haight, D.J.).

        a.  Whether the Plea
           Agreement Lacked
           <u>Consideration</u>

Petitioner's ineffective-assistance-of-counsel claim is
premised on his belief that counsel advised him to enter into a
plea agreement that lacked adequate consideration.

Courts "examine plea bargains using principles of
contract law, . . . [and] contracts are not valid unless sup-
ported by consideration." <u>United States v. Brunetti</u>, 376 F.3d
93, 95 (2d Cir. 2004) (<u>per curiam</u>), <u>citing</u> <u>United States v.</u>

20

<u>Salcido-Contreras</u>, 990 F.2d 51, 52 (2d Cir. 1993) (<u>per</u> <u>curiam</u>)
and <u>Fox v. Reich & Tang, Inc.</u>, 692 F.2d 250, 260 (2d Cir. 1982);
see <u>United States v. Sensi</u>, 542 F. App'x 8, 11 (2d Cir. 2013)
(summary order).  "[I]t is accordingly now well settled in this
Circuit that 'a guilty plea can be challenged for contractual
invalidity, including invalidity based on a lack of consider-
ation.'"  <u>United States v. Reap</u>, 391 F. App'x 99, 102 (2d Cir.
2010) (summary order), <u>quoting</u> <u>United States v. Brunetti</u>, <u>supra</u>,
376 F.3d at 95.

> The analogy between commercial contracts and plea
> agreements "can only be carried so far," however, <u>Unit-
> ed States v. Parrilla-Tirado</u>, 22 F.3d 368, 371 (1st
> Cir. 1994), and it is well established that every time
> a defendant pleads guilty he receives some built-in
> benefits, particularly given the leniency typically
> given to defendants who plead guilty, as opposed to
> those who stand trial, <u>see</u> <u>Corbitt v. New Jersey</u>, 439
> U.S. 212, 224 n. 14, 99 S.Ct. 492, 58 L.Ed.2d 466
> (1978).  <u>See</u> U.S.S.G. § 3E1.1 (providing for reductions
> in offense level for acceptance of responsibility);
> <u>United States v. Arteca</u>, 411 F.3d 315, 321 (2d Cir.
> 2005) ("in pleading guilty, [defendant] earned a
> three-level reduction from his base offense level for
> acceptance of responsibility-a benefit that he would
> have lost had he gone to trial"); <u>United States v.
> Morgan</u>, 406 F.3d 135, 137 (2d Cir. 2005) ("The plea
> agreement process permitted [defendant] and the govern-
> ment to allocate risk, to obtain benefits, to achieve
> finality and to save resources."); [<u>United States v.]
> Rosa</u>, 123 F.3d [94,] 97 [(2d Cir. 1997)] ("[P]lea
> agreements can have extremely valuable benefits to both
> sides-most notably, the defendant gains reasonable
> certainty as to the extent of his liability and punish-
> ment, and the Government achieves a conviction without
> the expense and effort of proving the charges at trial
> beyond a reasonable doubt"); <u>see</u> <u>also</u> <u>Brady v. United</u>

States, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious-his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated.").

United States v. Reap, supra, 391 F. App'x at 102.

The benefit that petitioner received in exchange for pleading guilty is clear.  In return for the plea agreement, the Government agreed to drop the original indictment which charged petitioner with multiple murder offenses.  Specifically, by entering into the plea agreement, petitioner avoided the charge of murder in aid of racketeering, which carries a mandatory sentence of life imprisonment.  See 18 U.S.C. § 1959(a)(1). Instead, petitioner was permitted to plead guilty to the offense of murder in connection with drug trafficking, which carries a mandatory minimum sentence of 20 years.  See 21 U.S.C. § 848(e)(1)(A).  In exchange for pleading guilty, petitioner also avoided the charge of discharging a firearm in furtherance of the narcotics conspiracy at-issue, which carries a mandatory minimum sentence of 10 years.  See 18 U.S.C. § 924(c)(1)(A)(iii).  Petitioner instead pled guilty to carrying a firearm in connection with a narcotics conspiracy, which is subject to a mandatory minimum sentence of 5 years.  See 18 U.S.C. § 924(c)(1)(A)(i). As the Government noted during sentencing, the plea deal was

22

"carefully constructed" by the parties through negotiations "to essentially arrive at a mandatory minimum of 25 years on the two counts" (Opp'n, Ex. A at A-54).  By contrast, petitioner's co-defendant, Chaz Glynn, did not enter into a comparable plea agreement, proceeded to trial on the S4 Indictment, was convicted on all counts and received a sentence of life imprisonment (Opp'n at 18).

        In addition to receiving a lower sentence than he would have received had he been convicted at trial, petitioner received a three point reduction in his base offense level for acceptance of responsibility, see United States v. Arteca, 411 F.3d 315, 321 (2d Cir. 2005), as well as "reasonable certainty as to the extent of his liability and punishment," United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997).  See United States v. Reap, supra, 391 F. App'x at 102 ("it is well established that every time a defendant pleads guilty he receives some built-in benefits").

        Further, contrary to petitioner's argument that he would have faced the same sentence had he gone to trial (Petition at 9), "[petitioner] would not have had the option of pleading to the Information if not for his Plea Agreement with the Govern-ment;" the Government filed the superseding information -- with its reduced charges -- solely as a result of petitioner's agree-ment to plead guilty (Opp'n at 18).  In any event, the mere

"chance at a reduced sentence" is itself a benefit of pleading guilty.  United States v. Sensi, supra, 542 F. App'x at 11 (emphasis in original), citing United States v. Brunetti, supra, 376 F.3d at 95.  Hence, the Government provided petitioner with adequate consideration in return for his plea of guilty to the counts in the superseding information.

In light of the substantial benefits petitioner received in return for pleading guilty, the plea agreement was supported by consideration and petitioner's counsel did not err by advising petitioner to enter into the plea deal.  See United States v. Reap, supra, 391 F. App'x at 102-03 (plea agreement did not lack consideration and petitioner's counsel, thus, did not commit a constitutional error).  Moreover, rather than suffer prejudice, counsel were able to secure a sentence for petitioner that was below the stipulated Guidelines range.  Petitioner's inability to show either that counsel committed an error or that prejudice resulted from that error is fatal to his claim of ineffective assistance.  Strickland v. Washington, supra, 466 U.S. at 697.

b.   Whether the Plea
     Agreement Lacked
     <u>Mutual Assent</u>

Petitioner also argues that counsel were ineffective
because they advised him to enter into a plea agreement that
lacked mutual assent.

"To be enforceable, a contract must have the assent of
both parties." <u>United States v. Session</u>, 06-CR-6091L, 2007 WL
1557471 at *17 (W.D.N.Y. May 24, 2007), <u>citing</u> <u>Register.com, Inc.</u>
<u>v. Verio, Inc.</u>, 356 F.3d 393, 427 (2d Cir. 2004).  "The manifes-
tation or expression of assent necessary to form a contract may
be by word, act, or conduct which <u>evinces</u> <u>the</u> <u>intention</u> <u>of</u> <u>the</u>
<u>parties</u> <u>to</u> <u>contract</u>." <u>Register.com, Inc. v. Verio, Inc.</u>, 356
F.3d 393, 427 (2d Cir. 2004) (emphasis in original).  Petitioner
unequivocally expressed his acceptance of the terms offered by
the Government in the plea agreement, as evidenced by his signing
of the plea agreement and the statements he made during his
allocution (<u>see</u> Opp'n, Ex. A at A-10 to A-16, A-17 to A-38).  At
no time did petitioner even suggest that he did not understand
the plea agreement or that he did not agree to it.

Moreover, to the extent petitioner's claim can be read
as asserting that counsel was ineffective for either permitting
petitioner to enter into a plea agreement that petitioner did not

25

understand or to which petitioner did not agree, the claim also
fails.

As noted above, during the plea allocution, Magistrate
Judge Peck conducted a searching inquiry.  Petitioner confirmed,
under oath, among other things, that (1) he understood what he
was doing and was mentally able to proceed with his guilty plea
(Opp'n, Ex. A at A-20 to A-21); (2) he had discussed the charges
and his plea with his counsel (Opp'n, Ex. A at A-22 to A-23);
(3) he was satisfied with his counsels' representation (Opp'n,
Ex. A at A-23); (4) he understood all the rights he was giving up
by pleading guilty (Opp'n, Ex. A at A-23 to A-24); (5) no one had
made any promises to him concerning what his sentence would be
(Opp'n, Ex. A at A-28); (6) he had agreed with the prosecutors
that a sentence of 352 to 452 months would be a reasonable sen-
tence (Opp'n, Ex. A at A-29) and (7) he was giving up any right
to challenge his sentence so long as it did not exceed 452 months
(Opp'n, Ex. A at A-30).  After seeing and hearing petitioner
testify to the foregoing facts and after seeing and hearing
petitioner testify to the facts giving rise to his guilty plea
(Opp'n, Ex. A at A-32 to A-34), Magistrate Judge Peck found that
petitioner understood the nature of the charges to which he was
pleading guilty, understood the consequences of his plea and that
the plea was knowing and voluntary (Opp'n, Ex. A at A-37).

26

"[S]tatements at a plea allocution carry a strong presumption of veracity" and a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw a guilty plea." <u>United States v. Torres</u>, 129 F.3d 710, 715 (2d Cir. 1997), <u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) <u>and</u> <u>United States v. Maher</u>, 108 F.3d 1513, 1529 (2d Cir. 1997); <u>accord</u> <u>United States v. Evans</u>, 537 F. App'x 10, 10 (2d Cir. 2013) (summary order); <u>United States v. Gonzalez</u>, 647 F.3d 41, 56-57 (2d Cir. 2011); <u>United States v. Doe</u>, 537 F.3d 204, 211 (2d Cir. 2008). A district court is entitled to rely on and to accept as true the statements that defendant makes under oath in the course of a plea allocution. <u>United States v. Hernandez</u>, <u>supra</u>, 242 F.3d at 112; <u>United States v. Maher</u>, <u>supra</u>, 108 F.3d at 1521. No hearing is necessary where the defendant's claim merely contradicts the record of his plea allocution or are merely conclusory. <u>United States v. Bishop</u>, 541 F. App'x 65, 66 (2d Cir. 2013); <u>Oyague v. Artuz</u>, 393 F.3d 99, 106 (2d Cir. 2004); <u>United States v. Torres</u>, <u>supra</u>, 129 F.3d at 715; <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1100 (2d Cir. 1992).

At most, petitioner does nothing more than contradict the statements that he made at his plea allocution and cites no external facts corroborating his claim that he did not understand

27

the plea agreement.  Such a claim is not sufficient to establish that the plea was not knowing and voluntary and no basis to conclude that the plea agreement lacked mutual assent.  A forti-ori, petitioner's claim fails to establish that his counsel was ineffective for permitting petitioner to enter into the plea agreement.  See King v. Cunningham, 442 F. Supp. 2d 171, 183 (S.D.N.Y. 2006) (Marrero, D.J) ("Although prisoners frequently claim that their guilty pleas were based on misunderstandings, 'induced by discussions' with their lawyers, that they 'would receive a lesser sentence than that ultimately imposed . . ., this has repeatedly been held insufficient to warrant the issu-ance of a writ.'" (citation omitted)).

### c.  Remaining Specifications of Ineffective Assistance

Petitioner's remaining grounds in support of his ineffective-assistance claim rely exclusively on petitioner's belief that the plea agreement was deficient either for lack of consideration or mutual assent; petitioner argues, principally, that his attorneys colluded with the Government and committed fraud when they negotiated and persuaded petitioner to sign a plea agreement that purportedly lacked consideration and mutual assent:

28

> [H]ow does [sic] two attorneys, an Assistant United
> States Attorney and an Attorney either employed by the
> Public Defenders Office or private practice (which ever
> applies), can [sic] together create a document that
> lacks the absolute reason any two parties enter into
> contracts . . . to receive something of benefit, con-
> sideration.  This can only be achieved because of the
> ignorance of the petitioner, which is therefore fraud
> on the court.
>
>                    *    *    *
>
> The petitioner asserts that when two attorneys, the
> Government and Defense Attorney created (more of just
> the Government) creates [sic] this document with requi-
> site elements of law, consideration and mutual assent
> to that consideration, such is in fact fraud on the
> Court and the petitioner, where defense counsel should
> defend the petitioner and his interest, regarding peti-
> tioner's contract and equity.

(Petition at 5, 9).  As discussed above, however, the plea agree-
ment did not lack the contractual elements of consideration and
mutual assent.

Further, petitioner's allegations are entirely
conclusory and lack any support from the record.  "Such unde-
tailed and unsubstantiated assertions that counsel [were ineffec-
tive] have consistently been held insufficient to satisfy either
Strickland prong."  Bludson v. Superintendent, 06-cv-474, 2009 WL
704487 at *8 (N.D.N.Y. Mar. 16, 2009), citing Polanco v. United
States, 95 Civ. 3779 (CSH), 2000 WL 1072302 at *10 (S.D.N.Y. Aug.
3, 2000) (Haight, D.J.).

29

Because petitioner cannot show that counsel's advice during the plea process was defective, he has failed to establish a Sixth Amendment violation and has failed to establish a basis to invalid the plea agreement's waiver provision. <u>See</u> <u>United States v. Monzon</u>, <u>supra</u>, 359 F.3d at 118-19 (appeal waiver is unenforceable if the ineffective-assistance claim is meritorious). Accordingly, the Section 2255 waiver in the plea agreement is enforceable and the Petition should be entirely dismissed.

IV. <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that the Petition be dismissed.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam). For the reasons set

30

forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155

(1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir.

1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054

(2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        April 24, 2014

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Anthony Valentine
No. 59289-054
FCI Edgefield
Federal Correctional Institution
P.O. BOX 725
Edgefield, South Carolina  29824

Mr. Anthony Valentine
No. 59289-054
U.S.P. Beaumont
U.S. Penitentiary
P.O. Box 26030
Beaumont, Texas  77720

Marissa Molé, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York  10007